AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original    ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
3/7/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ____MMC____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

United States of America

v.

JOYCE TURNER,

Defendant(s)

**FILED**
CLERK, U.S. DISTRICT COURT
3/07/25
CENTRAL DISTRICT OF CALIFORNIA
BY: ____MR____ DEPUTY

Case No.    2:25-MJ-01293-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of January 9, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1040 | Fraud in Connection with Major Disaster or Emergency Benefits |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Brent Beezley, DHS-OIG Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: March 7, 2025

*Judge's signature*

City and state: Los Angeles, California     Hon. Pedro V. Castillo, U.S. Magistrate Judge
*Printed name and title*

AUSA: Kerry L. Quinn, x5423

**AFFIDAVIT**

I, BRENT BEEZLEY, being duly sworn, declare and state as follows:

I. **INTRODUCTION**

1.  I am a Special Agent ("SA") of the Department of Homeland Security-Office of Inspector General ("DHS-OIG") assigned to the Los Angeles Resident Office. From October 2017 through April 2022, I was employed as Customs and Border Protection Officer, at the San Ysidro Port of Entry and performed customs and immigration enforcement. From April 2022 through September 2022, I was employed by the United States Marshals Service, in San Diego, California and performed cell block intake and operations. From September 2022 through June 2024, I was employed as an Investigative Specialist with Naval Criminal Investigative Service, and performed criminal investigations involving crimes against person, deaths/suicides, child abuse, sexual assaults and fraud. I have been employed with DHS-OIG as a SA since June 2024 and have had formal training at the Federal Law Enforcement Training Center ("FLETC"), relating to the investigation of financial crimes, general crimes, immigration and customs. I have assisted in and/or personally conducted investigations involving government fraud, narcotics, sexual abuse, domestic violence, deaths and suicides related to government personnel.

II. **PURPOSE OF AFFIDAVIT**

2.  This affidavit is made in support of a criminal complaint against and arrest warrant for JOYCE TURNER for a

violation of 18 U.S.C. § 1040 (Fraud in connection with major disaster or emergency benefits).

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. SUMMARY OF PROBABLE CAUSE

4. An investigation conducted by DHS-OIG has revealed JOYCE TURNER submitted a fraudulent application to the Federal Emergency Management Agency ("FEMA") for disaster relief benefits associated with wildfires that destroyed a large number of structures (and caused other damages) in the Los Angeles area in January 2025. The investigation is ongoing, but thus far, I have not found any evidence TURNER ever lived in California; instead, she appears to live in Houston, Texas. TURNER has submitted at least ten other applications for disaster relief (so eleven total) relating to seven other federally-declared emergencies, and otherwise has numerous previous arrests and convictions for fraud offenses. TURNER also applied for unemployment insurance benefits from the California Employment Development Department ("EDD") in both August 2020 and again in

January 2025, even though there is no evidence she has ever lived or worked in California.

### IV. STATEMENT OF PROBABLE CAUSE

**A. The California Wildfires**

5. As was reported in numerous national and local media reports, in early January 2025, a series of destructive wildfires (the "California Wildfires") spread throughout the Los Angeles metropolitan area in California. These fires cumulatively burned nearly 60,000 acres of land, killed 29 people, forced more than 200,000 people to evacuate, and destroyed more than 16,000 structures. The two largest of these fires were the Eaton and Palisades wildfires. According to the California Department of Forestry and Fire Protection, the Eaton and Palisades wildfires are, respectively, the second and third most destructive wildfires in California history. https://www.fire.ca.gov/our-impact/statistics (last visited March 5, 2025).

6. Based on my review of a "4856-DR-CA-Initial Notice" provided by FEMA, I know that on January 8, 2025, President Biden approved a Major Disaster Declaration for California in response to the California Wildfires under the authority of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121 et seq.

7. From my involvement in this investigation, I know that FEMA is an agency within DHS. FEMA's primary purpose is to coordinate the response to disasters that have occurred in the United States and that overwhelm the resources of local and

state authorities. In response to the California Wildfires, FEMA made available a program to provide financial assistance to affected individuals and families ("victims"). Victims could apply for assistance online, with the FEMA mobile application, applying at a disaster relief center or by calling the FEMA Helpline. Among other forms of relief, victims, including renters who lost their rental residences, could qualify for a one-time payment of $750 noted as a FEMA relief payment, $43,600 for other needs assistance (personal property, transportation, medical, etc.), and housings assistance for up to 18 months at varying rates (1BR $2,081, 2BR $2,625, 3BR $3,335, 4BR $3,698). Homeowners are also potentially eligible for additional relief up to $43,600 for home repair.

    **B. TURNER's Submission of a Fraudulent Claim for FEMA Benefits related to the California Wildfires**

    8. On February 6, 2025, DHS-OIG received notification from FEMA regarding a claim for federal disaster assistance submitted by JOYCE TURNER (the "Application") for a purportedly damaged dwelling located at 801 E. Walnut Street, Apartment 2224, Pasadena, California 91101 (the "Walnut Street Address"). In the Application, TURNER indicated the Walnut Street Address was a rental property damaged in the California Wildfires and the damaged dwelling was her primary residence. The Application sought disaster relief associated with the California Wildfires.

    9. According to FEMA records, on January 9, 2025, TURNER submitted the Application, and on January 10, 2025, she called into the FEMA disaster center hotline via telephone to modify

4

the damaged dwelling address on the Application to 1207 Del Rey Avenue, Pasadena, California (the "Del Rey Avenue Address").

10. FEMA records also show that on January 28, 2025, in connection with the Application, FEMA released the following payments via electronic funds transfer ("EFT"), $750.00 initial payment, $6,670.00 for rental assistance, $16,952.91 for personal property damages along with $3,822.00 for displacement assistance. These funds were electronically deposited into JSC Federal Credit Union aka Wellby Financial, Houston, Texas 77258, Checking account# 10302034891000/routing number# 313083992, which was the account listed in the Application for receipt of funds. I am in the process of obtaining additional information regarding that account and the disposition of the funds.

11. As set forth in more detail below, information obtained in the course of the investigation indicates the Application included materially false statements, and that it was TURNER herself and not someone pretending to be TURNER, who submitted the Application. This information includes the following:

    a. According to a map of areas damaged by the Eaton Fire, the Walnut Street Address was not damaged as a result of the Eaton fire.

    b. According to information obtained from the property owners of the Del Rey Avenue Address, TURNER has no connection to that address, and the lease TURNER submitted as part of the Application is a forgery. The Del Rey Avenue

5

Address was damaged by the Eaton fire, but the property owners have not applied to FEMA for disaster assistance.

      c.    The mailing address listed on the Application was 10411 Matterhorn Drive, Rosharon, Texas 77583 (the "Matterhorn Drive Address"), and TURNER was recently observed at this address.

      d.    A car resembling the car registered to TURNER was recently observed at the Matterhorn Drive Address,[1] and law enforcement databases otherwise link TURNER to the Matterhorn Drive Address.[2]

      e.    Information from the United States Postal Service indicates TURNER and her children are currently receiving mail at the Matterhorn Drive Address.

      f.    The Application was submitted and accessed from internet protocol ("IP") addresses in Houston, Texas, where TURNER has been recently observed.

---

[1] The car observed in the driveway of the Matterhorn Drive Address appears to be the same make and model as a car registered to TURNER (at the Yellowstone Boulevard Address discussed in the next footnote), but the car in the driveway is black and the registration indicates the car is white.

[2] TURNER's Texas driver's license lists a different address, 4927 Yellowstone Boulevard, Houston, Texas 77021, as her home address. TURNER also used this address for at least one other claim for FEMA benefits, as recently as May 2024. But law enforcement databases link the Yellowstone Boulevard Address to N. Simon, born in 1941, and TURNER's maiden name is Simon (and TURNER listed her name as "Joyce Simon" on the 2020 claim for unemployment insurance benefits). TURNER was born in 1969, suggesting N. Simon is TURNER's mother or another close relative. Other information from law enforcement databases (including a vehicle registered in her name at that address) indicates TURNER previously occupied, or otherwise has a connection to, the Yellowstone Boulevard Address.

g.  According to law enforcement databases, the phone number listed in the Application, (713) 373-2522 (the "Subject Telephone"), is associated with TURNER, and someone answering that number identified herself as TURNER and indicated she was the one who applied for disaster relief benefits.

h.  Returns from a recent phone location warrant for the Subject Telephone indicate TURNER herself is the one who is using the Subject Telephone, and that she is residing at the Matterhorn Drive Address – i.e., not in California.

12. TURNER submitted at least ten other applications to FEMA for disaster relief (so eleven total) related to seven other federally-declared disasters, e.g., Hurricane Katrina (2005), Hurricane Ike (2008), Hurricane Isaac (2012), Hurricane Harvey (2017), and Hurricane Beryl (2024), and otherwise has a criminal history showing previous arrests and convictions for fraud offenses.

13. In support of the Application, TURNER submitted a handwritten note with a photocopy of her driver's license from the State of Georgia.[3]  The note states "the reason why my license dose [sic] not match my address I just hadn't took out [sic] the time to schedule the appointment to get them changed to California from Georgia, and yes, 1207 Del Rey Ave. Pasadena Ca. 91107, was my permanent address at the time of fire."

---

[3] According to law enforcement databases, TURNER has driver's licenses from Texas and Georgia, and the license submitted to FEMA appears to be a genuine copy of her Georgia license.  There is no record of her ever having a license in California.

7

14. In support of the Application, TURNER submitted two pages of a purported 11-page "Lease Agreement" dated July 29, 2024, for a three bedroom, three bathroom townhouse located at 1207 Del Rey Avenue, Pasadena, California 91107. I reviewed the Lease Agreement and noticed that only the first page and signature page were included. TURNER's name appears on the signature page as "Tenant Name" along with two names, Y.D.L. and Y.J.L. identified under "Landlord Name."

15. I obtained a property records for the Del Rey Avenue Address from the Los Angeles County Registrar - Recorder/County Clerk. According to these records, the Del Rey Avenue Address is a multi-family property/townhome and is registered to Y.D.L. and Y.J.L.

16. On February 27, 2025, SA Nathanael Romero ("SA Romero") and I conducted a consensually recorded interview of Y.D.L. and Y.D.L.'s real estate agent. In that interview, the following occurred:

    a. Y.D.L. stated that the Del Rey Avenue Address was listed for sale on July 1, 2024, and was previously occupied by a tenant for nine years prior to July 1, 2024, but the Del Rey Avenue Address was vacant prior to the California Wildfires.

    b. Y.D.L. was shown a copy of the lease agreement mentioned in paragraph 15. Y.D.L. stated that the lease agreement was not the correct form of lease she uses to rent the Del Rey Avenue Address. Y.D.L. stated that the signatures on the lease were not her signature or her husband's (Y.L.J.'s) signature.

  c. Y.D.L. was shown a photograph from a previous arrest of TURNER, and Y.D.L. confirmed that she had never met or leased property to TURNER.

  d. SA Romero asked Y.D.L. if she had additional proof showing the Del Rey Avenue Address was in fact vacant at the time of the California Wildfires. Y.D.L. provided a contract with a company that provided staging furniture for properties that have been listed for sale. Y.D.L. advised that the contract went into effect July 3, 2024, and was still in place at the time the Del Rey Avenue Address was destroyed in the Eaton fire.

  e. Y.D.L. stated she did not file a FEMA disaster assistance claim as she only filed a claim with her insurance company for damage that occurred during the California Wildfires.

  **C. Additional Evidence that TURNER Submitted the Fraudulent Claim for Benefits**

 17. On February 26, 2025, DHS-OIG SA Roxanne Dale conducted a recorded telephone call with TURNER. To this end, SA Dale called telephone number (713) 373-2522, the number listed on the Application (the "Subject Telephone"). SA Dale asked if she was speaking to TURNER. TURNER confirmed that fact. SA Dale then said she was a FEMA contractor and wanted to discuss the Application. SA Dale asked if TURNER applied for FEMA disaster assistance and if TURNER received any funds from FEMA. TURNER confirmed that she did receive funds and FEMA assistance. SA Dale asked if Turner would be willing to meet in

9

person to verify her identity in order to continue processing her FEMA application. TURNER advised she was out of state at a funeral and could not meet in person. SA Dale verified with TURNER that the address she requested assistance for was in fact 1207 Del Rey Avenue in Pasadena, and TURNER said yes.

18. On March 5, 2025, DHS-OIG agents from the Houston field office conducted surveillance at the Matterhorn Drive Address and observed someone matching TURNER's description at that address (from a comparison to a previous booking photograph and the photograph on TURNER's Texas driver's license). I have reviewed photographs from this surveillance, and the pictured individual appears to be TURNER. The surveillance also revealed a car resembling the car registered to TURNER (see footnote 1) in the driveway of the Matterhorn Drive Address.

19. On March 6, 2025, I obtained a phone location warrant for the device associated with the Subject Telephone, pursuant to a warrant signed by the Honorable Pedro V. Castillo, In re Cellular Telephone, 2:25-MJ-01238 (C.D. Cal.), and I have just begun receiving returns from this warrant, which thus far indicate TURNER is the user of the Subject Telephone, and she is residing in the Matterhorn Drive Address. Specifically, the returns show the Subject Phone was in the vicinity of the Matterhorn Drive Address overnight between March 6, 2025, and March 7, 2025, and that it has been moving in the nearby neighborhood through the morning and into the early afternoon (local time) on March 7, 2025.

**D. TURNER's History of Fraud Offenses**

20. I reviewed TURNER's criminal history and learned that she has felony convictions in the State of Texas dating from March 1995 through at least 2016 for the following charges: Credit Card Abuse, False Statement for Property/Credit, Fraud Use and Possession of Identifying Information, and Insurance Fraud. As stated above, she has submitted ten other applications to FEMA for disaster relief related to seven other federally-declared disasters, including Hurricane Katrina (2005), Hurricane Ike (2008), Hurricane Isaac (2012), Hurricane Harvey (2017), and Hurricane Beryl (2024).

21. I have also learned TURNER submitted a claim for unemployment insurance benefits from the California EDD on August 15, 2020 (when COVID-19 pandemic unemployment benefits were available) and again on January 10, 2025, claiming in these applications she was living in the Los Angeles area and, for the 2020 application, that she had lost work here because of the COVID-19 pandemic, and for the 2025 application, that she had lost work because of the California Wildfires. In 2020, she claimed to live on Hauser Boulevard, Los Angeles CA 90036, and to have made $60,000 annually as a sales representative working from this address; she listed the Subject Telephone as her phone number. EDD paid her more than $50,000 for this claim. In 2025, she listed the Walnut Street Address as her mailing address, but the Matterhorn Drive Address as her residence; she again listed the Subject Telephone as her phone number. I am still in the process of investigating these applications, but

thus far, I have seen no evidence that TURNER ever lived or worked (or lost work) in California, and EDD has no record of her having worked in California.

## V. CONCLUSION

22. For all the reasons described above, there is probable cause to believe that JOYCE TURNER has committed a violation of 18 U.S.C. § 1040 (Fraud in connection with major disaster or emergency benefits).


Attested to by the applicant in
accordance with the requirements of
Fed. R. Crim. P. 4.1 by telephone on
this _7th day of March, 2025.

_____
HON. PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE